NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-1157

COMMONWEALTH

vs.

MARK LOVE.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant was convicted of the lesser included offense of voluntary manslaughter on an indictment charging him with second-degree murder.  The defendant appeals, arguing that the trial judge abused her discretion by permitting the Commonwealth to exercise a peremptory challenge of a prospective juror, who identified as a Black Jamaican woman (juror no. 30), over his objection pursuant to Batson v. Kentucky, 476 U.S. 79 (1986), and Commonwealth v. Soares, 377 Mass. 461, cert. denied, 444 U.S. 881 (1979), overruled in part by Commonwealth v. Sanchez, 485 Mass. 491, 511 (2020).  We affirm.

Background.  In April of 2018, the defendant, the victim, and two other men were outside near the TD Garden in Boston and

were drinking alcohol. All four individuals were friendly with one another, and each had a history of homelessness. The victim asked to borrow some money from the defendant. The defendant and the victim subsequently engaged in a verbal argument about the money and, according to at least one witness, the argument became physical. The victim suffered a fatal stab wound to the chest, and the defendant was later charged with his murder.

The defendant's case proceeded to trial. On the first day of jury selection, the Commonwealth exercised eight peremptory challenges. On the second day of jury selection, the Commonwealth exercised seven peremptory challenges, including juror no. 30. During voir dire, juror no. 30 stated that she was employed as a certified nursing assistant. She was Black and stated that she was born in Jamaica and had moved to the Boston area approximately seven years ago. The judge then said to juror no. 30, "I sense that English is your second language." Juror no. 30 responded that English was her first language and that she had no trouble understanding it. When asked about having any strong feelings towards homeless people that may result in bias, juror no. 30 explained that although she had firsthand experience working in a homeless environment, she would be able to maintain impartiality.

The Commonwealth exercised a peremptory challenge and counsel for the defendant made a timely Batson-Soares objection.

2

Batson; Soares.  The judge, believing the defendant had made the requisite prima facie showing, inquired into the prosecutor's reasoning.  The prosecutor stated his reason for exercising a peremptory challenge was that he had some difficulty understanding juror no. 30's responses to voir dire questions due to a "very heavy accent" and was concerned that this may also impact juror no. 30's ability to communicate with other jurors during deliberations.[1]  The prosecutor noted that the trial judge had inquired whether English was juror no. 30's first language due to her accent.  The prosecutor added that his challenge was also based upon juror no. 30's employment with a homeless shelter as this case involved members of the homeless community, expressing his concern that juror no. 30's prior employment may cause her to be more compassionate.  In response, the judge clarified that juror no. 30 had been employed as a housekeeper at the Pine Street Inn, had limited interaction with

---

[1] The prosecutor, when asked a second time to articulate his reasons for the peremptory challenge, stated the following:

"The reasons were I was having trouble understanding her. I was having -- I believe she had some difficulty on my questions that I asked her.  I was concerned that when you sit on a jury and when you are listening to evidence from a lot of different people that she may have some issues not necessarily understanding, but a lot of the job once the jury is selected and goes to the deliberation room is to communicate with the other jurors.  If I'm having a problem listening to her and understanding her, honestly, I think that perhaps becomes an issue when there's a deliberation on a murder case."

3

the people who were served there, and left the job to pursue her passion of being a caretaker. The judge then heard from the defendant's attorney who stated that he did not have any difficulty understanding juror no. 30 and that her answers to the questions showed she could be impartial.

The judge stated that, despite initially having difficulty communicating with juror no. 30, she believed that juror no. 30 could understand English and commented that she would make a "great juror." The judge then correctly stated that the standard was not whether she agreed or disagreed that juror no. 30 should be seated as a juror, but rather her role was to decide whether the prosecutor's stated reason for the challenge was "adequate and genuine." The judge then heard from both counsel and, in allowing the challenge, cited to the relevant case law, emphasizing that the role of the trial judge was to determine whether the proffered reason "is clear, reasonably specific and personal to the juror rather than based on some group affiliation . . . and that it was genuine; that is, that is was in fact the reason for the exercise of the challenge." The judge found that the reason was indeed adequate and genuine.

Discussion. 1. Batson-Soares framework. On appeal, the defendant argues that the Commonwealth's peremptory challenge of juror no. 30 was an unconstitutional race-based challenge. In a criminal trial, a defendant is entitled to a trial by an

4

impartial jury and neither party may exercise a peremptory challenge on the basis of race or other protected classes. See Sanchez, 485 Mass. at 493. If there is an objection to a peremptory challenge, the trial judge must follow a three-step, burden shifting analysis. See Commonwealth v. Jackson, 486 Mass. 763, 768 (2021). "To rebut the presumption that the peremptory challenge is proper, the challenging party 'must make out a prima facie case' that it was impermissibly based on race or other protected status: by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose" (citation omitted). Commonwealth v. Kozubal, 488 Mass. 575, 580 (2021). Next, if the prima facie case has been established, "the burden shifts to the party exercising the challenge to provide a group neutral explanation for it." Id. Finally, the judge must determine whether the proffered explanation is both adequate and genuine. See Sanchez, supra at 493. A party's explanation is considered adequate if it is "clear and reasonably specific" and "personal to the juror and not based on the juror's group affiliation." Jackson, supra at 779, quoting Commonwealth v. Maldonado, 439 Mass. 460, 464-465 (2003). "An explanation is genuine if it is in fact the reason for the exercise of the challenge." Jackson, supra.

We review a judge's decision regarding a peremptory challenge for an abuse of discretion. See Jackson, 486 Mass. at

5

768. "We grant deference to a judge's ruling on whether a permissible ground for the peremptory challenge has been shown and will not disturb it so long as it is supported by the record" (citation omitted). Commonwealth v. Rosa-Roman, 485 Mass. 617, 636 (2020).

2. The peremptory challenge of juror no. 30. The parties agree that the question before us is whether the judge abused her discretion in the third step of this analysis: whether the proffered explanation was both adequate and genuine. As stated earlier, one of the prosecutor's reasons for exercising a peremptory challenge was that the prosecutor had some difficulty understanding juror no. 30's responses to voir dire questions and was concerned that this may also impact juror no. 30's ability to communicate with other jurors during deliberations. The judge thoroughly examined the reasons offered for the challenge and conducted an in-depth examination of the challenge to juror no. 30. The judge engaged with counsel at side bar, and although the judge initially considered whether she herself believed juror no. 30 would make a good juror, she soon turned back to the correct question: whether the prosecutor's reasoning was adequate and genuine. The judge concluded that the prosecutor's reason for exercising the peremptory challenge was both adequate and genuine. This conclusion was not an abuse of discretion.

6

The prosecutor's expressed concern over juror no. 30's ability to speak and understand English was detailed and specific, and was, in fact, also a concern that the trial judge initially shared. Moreover, the judge did not automatically accept the prosecutor's reason for challenging juror no. 30. Instead, the judge independently evaluated through questioning whether the reason was "bona fide or a pretext." Jackson, 486 Mass. at 63. We note that one of the prosecutor's reasons for challenging juror no. 30, her employment with a homeless shelter, was quickly dismissed by the trial judge. However, because more than one reason was offered to support the peremptory challenge, the judge properly analyzed both reasons, and found the prosecutor's concern about juror no. 30's ability to communicate was genuine and adequate. We see no abuse of discretion in the judge's determination, after thoughtful

consideration, that the prosecutor's reasoning was both adequate and genuine.

> Judgment affirmed.
>
> By the Court (Vuono, Rubin & Walsh, JJ.[2]),

Clerk

Entered:  June 26, 2024.

---

[2] The panelists are listed in order of seniority.